IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN K. WILSON, an individual,                Civ. No. 10-6393-AA
                                               OPINION AND ORDER
          Plaintiff,

     v.

STATE OF OREGON; THEODORE
KULONGOSKI, Governor of Oregon;
JOHN KROGER, Attorney General of
the State of Oregon; SCOTT HARRA,
Director, Oregon Department of
Administrative Services; CLAUDIA
BLACK, Health Policy Advisor to
the Governor; TONY GREEN,
Director of Communications and
Policy for Oregon Dept. of
Justice; DONNA SANDOVAL BENNETT,
Assistant Attorney General; and
SERVICE EMPLOYEES INTERNATIONAL
UNION, LOCAL 503; CHRISTINA
McCALLISTER; TIMOTHY MOLLOY;
CERYNTHIA MURPHY; SAMANTHA
PATNODE; LAWRENCE PECK; and
CALLIE ZINK, individuals,

          Defendants.

_____

Roger Hennagin
Roger Hennagin, P.C.
8 North State Street, Suite 300
Lake Oswego, OR 97034
     Attorney for Plaintiff

1 - OPINION AND ORDER

Stephen E. Dingle
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301
    Attorney for State of Oregon Defendants

AIKEN, Chief Judge:

    Plaintiff Susan Wilson filed suit against the State of Oregon,
the former Governor and other state officials and employees (State
defendants), the Service Employees International Union, Local 503
(Local 503), an Oregon public employees union, and individual union
members.   Plaintiff alleges violations of her constitutional due
process rights pursuant to 42 U.S.C. § 1983, breach of contract,
wrongful   discharge,   and   intentional   interference   with   her
employment.   Certain State defendants move for partial summary
judgment with respect to plaintiff's first three claims for relief,
and plaintiff moves for leave to amend her complaint.   For the
reasons set forth below, State defendants' Motion for Partial
Summary Judgment (doc. 44) is granted in part and denied in part,
and plaintiff's Motion to Amend Complaint (doc. 55) is denied.

                            BACKGROUND

    Plaintiff was employed with the state of Oregon as Director of
the Oregon Health Licensing Agency (OHLA) from July 1, 1999 to
March 5, 2009. Plaintiff was appointed by then-Governor Kitzhaber,
but the Director of the Oregon Department of Administrative
Services (DAS) later became her appointing authority.   Pl.'s Decl.
at 3.   Scott Harra was the Director of DAS at the time of

2 - OPINION AND ORDER

plaintiff's discharge.  Id.

In February 2003, then-Governor Kulongoski instituted a new
directive requiring agencies to streamline their operations and
reduce impacts of governmental regulation on Oregon businesses.  In
2005, Kulongoski issued a second regulatory streamlining directive.
In 2007, Kulongoski instructed health-related agency directors to
ensure the enforcement of Oregon's consumer protections laws.

With the assistance of her administrative services director,
Richard McNew, plaintiff initiated a planning process to achieve
compliance with the Governor's regulatory streamlining objectives.
The plan involved reorganization of the agency and reassignment of
OHLA staff.  The hiring of additional temporary staff was required
to accomplish these tasks.

Defendants McCallister, Molloy, Murphy, Patnode, Peck, and
Zink complained to Local 503 representatives that plaintiff engaged
in nepotism and misconduct.  Plaintiff alleges that these
complaints were motivated by defendants' displeasure regarding the
proposed reorganization of OHLA and potential reassignments.

Local 503 representatives relayed these complaints to the
Governor's office and the Attorney General's office.  In doing so,
plaintiff maintains that Local 503 unlawfully bypassed the
grievance process pursuant to the collective bargaining agreement
between Local 503 and the State.  Further, plaintiff alleges that
State officials did not notify plaintiff of the complaints.

3 - OPINION AND ORDER

In late January 2009, Local 503 officials, representatives
from the Governor's office and DAS, and several OHLA employees met
to discuss the complaints against plaintiff and McNew. Plaintiff
alleges that she was not afforded the opportunity to address the
staff grievances.

On February 2, 2009, plaintiff was placed on administrative
leave pending an investigation of the allegations concerning her
performance. Dfs.' Memo. in Support of Motion for Partial Summ.
Judg. at 3. Later that day, the Governor's office issued a press
release stating that plaintiff had been placed on administrative
leave while charges of misconduct and nepotism were being
investigated. Pl.'s Decl. at 6.

On February 3, 2009, published reports stated that the
Governor's office "take[s] these allegations very seriously." Id.

On February 4, 2009, the Attorney General's spokesperson, Tony
Green, publicly stated that plaintiff was being investigated for
"wrongdoing." Id.

On March 5, 2009, Harra notified plaintiff that she was being
permanently discharged. Id. at 7. Plaintiff was never offered a
name-clearing hearing. Dfs.' Memo. in Support of Motion for
Partial Summ. Judg. at 3.

                              STANDARD

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the movant

4 - OPINION AND ORDER

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for partial summary judgment are evaluated using the same standard. Id. The Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A dispute involving a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson 477 U.S. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). The materiality of a fact is determined by the substantive law governing the claim. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Upon the moving party's meeting that burden, the non-moving party must then go beyond the pleadings and identify facts which show a genuine issue of fact for trial. Celotex, 477 U.S. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the

moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party. T.W., 809 F.2d at 630.

## DISCUSSION

### I. State Defendants' Motion for Partial Summary Judgment

Certain State defendants, including the State of Oregon,
Kulongoski, Kroger, Bennett, Black, Green, and Harra, move for
partial summary judgment as to plaintiff's first three claims for
relief.

In her first claim, plaintiff alleges that Kulongoski denied
plaintiff her constitutional right to a name-clearing hearing and
published false allegations against her without conducting a fair
and thorough investigation. Plaintiff also alleges that Kroger
failed to advise Kulongoski of plaintiff's right to a name-clearing
hearing or insure that plaintiff was provided a name-clearing
hearing. Plaintiff's second claim is against the State of Oregon,
Kulongoski, Kroger, Bennett, Black, Green, and Harra for conspiracy
to deny her a name-clearing hearing in violation of § 1983.
Plaintiff's third claim is against the State of Oregon for breach
of contract, alleging that the State breached its employment
contract with plaintiff when she was discharged as a direct result
of her compliance with, and execution of, the Governor's executive
orders and directives.

A. The State of Oregon is dismissed from plaintiff's first two claims for relief.

Plaintiff concedes that the State of Oregon is not a proper party to a § 1983 claim. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (states are not "persons" within the meaning of 42 U.S.C. § 1983, and therefore cannot be sued for violation of civil rights under color of state law). Accordingly, State defendants' motion to dismiss the State of Oregon from plaintiff's first and second claims is granted.

B. Kulongoski and Kroger are dismissed from both plaintiff's first and second claims for relief; Bennett, Black, and Green are dismissed from plaintiff's second claim for relief.

With respect to the remaining defendants in plaintiff's first two claims for relief, State defendants argue that Kulongoski, Kroger, Bennett, Black, and Green all lacked authority to "cause" the constitutional injury to plaintiff, because no statute or rule exists which authorizes them to offer plaintiff a name-clearing hearing. As to Harra, State defendants maintain that he was authorized to grant plaintiff a name-clearing hearing but that a sufficient causal connection between Harra's wrongful conduct and the constitutional violation is lacking. I agree in part.

Plaintiff's first two claims are based on failures to act. In order to be liable for the deprivation of a constitutional right, within the meaning of § 1983, State defendants must have "cause[d]" the constitutional injury to plaintiff. Failing to perform when one is legally required to do so may "cause" constitutional injury

7 - OPINION AND ORDER

within the meaning of § 1983. Johnson v. Duffy, 588 F.2d 740, 743
(9th Cir. 1978) (citing Sims v. Adams 537 F.2d 829 (5th Cir.
1976)). Furthermore, plaintiff argues that in order to be liable
for inaction, "[w]itholding comments, advice or action when there
is a duty to act has to suffice." Pl.'s Opp., p. 8. Therefore,
plaintiff's first and second claims are based on the existence of
a duty to act and defendants' subsequent failure to do so.
However, if one lacks authority to "cause" the constitutional
injury, failure to perform cannot violate § 1983 as a matter of
law. See Gratsch v. Hamilton County, 12 Fed. Appx. 193, 206 (6th
Cir. 2001) (holding that where defendant lacked authority to
provide pre-termination hearing, defendant cannot be liable under
§ 1983 for failure to provide such a hearing). As such, both the
first and second claims require evidence of each State defendants'
authority to offer plaintiff a name-clearing hearing.

     Plaintiff fails to provide "significant probative evidence" in
support of her assertion that Kulongoski, Kroger, Bennett, Black,
and Green each possessed authority to grant plaintiff a name-
clearing hearing. Anderson, 477 U.S. at 249. Neither Bennett nor
the Oregon Department of Justice has authority to offer a name-
clearing hearing to employees of other agencies. Bennett Decl., p.
2. Plaintiff's conclusory assertion that Kroger and Bennett's
involvement extended beyond advising and consulting does not
establish their authority to grant a name-clearing hearing. Pl.'s

8 - OPINION AND ORDER

Decl., pp. 4, 9. While Or. Rev. Stat. 180.060(6) and (7) grant the
Attorney General authority to, "when requested, perform all legal
services for the state or any department or officer of the state,"
plaintiff offers no evidence that Kroger, as an attorney advising
a client, can force the Governor or other State official to choose
a particular course of action. Furthermore, based on this court's
ruling on Plaintiff's Motion to Compel (doc. 62), there can be no
evidence concerning what advice, if any, Kroger or Bennett
provided. Id. Likewise, plaintiff's assertion that she only
received instructions regarding her duties from two sources, one of
which was Governor Kulongoski's office, is insufficient to
establish Kulongoski's authority to grant a name-clearing hearing.
As to Black and Green, plaintiff offers no evidence establishing
the authority of Black and Green to offer plaintiff a name-clearing
hearing.

Regarding Harra, State defendants concede that he had
authority to grant plaintiff a name-clearing hearing, and that
plaintiff was never offered a name-clearing hearing. However,
State defendants argue Harra cannot be held liable because he did
not publish the allegedly stigmatizing statements. I disagree and
find a genuine issue of material fact as to Harra's personal
involvement in the constitutional deprivation. Because it is not
the publication of stigmatizing information, but "the denial of the
name-clearing hearing that causes the deprivation of the liberty

9 - OPINION AND ORDER

interest without due process," Brown v. City of Niota, 214 F. 3d
718, 722-23 (6th Cir. 2000), Harra may be liable under a theory of
supervisory liability if he was personally involved in the
constitutional deprivation or if there was a sufficient causal
connection between Harra's wrongful conduct and the constitutional
violation. See Hansen v. Black, 885 F. 2d 642, 646 (9th Cir.
1989). Moreover, Harra is not required to have published the
stigmatizing information about plaintiff - it is sufficient that
another officer or employee of the State of Oregon is alleged to
have done so. See Wisconsin v. Constantineau, 400 U.S. 433, 437
(1971) (where government action injured reputation, opportunity to
be heard is prescribed); see also In re Selcraig, 705 F. 2d 789,
796 (5th Cir. 1983) (explaining that "the fourteenth amendment
provides [] procedural protection against injury inflicted by state
officers to the interest state employees have in their
reputation").

Therefore, because State defendants establish that no genuine
issue of material fact exists as to Kulongoski, Kroger, Bennett,
Black, and Green, but fail to so establish as to Harra, State
defendants' Motion for Partial Summary Judgment is granted in part
and denied in part.

## C. State defendants' motion to dismiss plaintiff's third claim for relief is denied.

Plaintiff's third claim for relief alleges that the State of
Oregon breached plaintiff's employment agreement when it discharged

10- OPINION AND ORDER

plaintiff as a direct result of her compliance with, and execution of, the Governor's executive orders and directives. State defendants argue that plaintiff's third claim should be dismissed, based on her concession in response to Local 503's Motion to Dismiss that she was not a beneficiary of the collective bargaining agreement. I disagree.

Plaintiff asserts that her third claim is based on two separate contracts: a collective bargaining agreement between the State of Oregon and Local 503 and an employment contract between the State of Oregon and plaintiff. The collective bargaining agreement with Local 503 constitutes only one prong of this "two-pronged approach." Pl.'s Opp., p. 10. The other prong, which plaintiff has not withdrawn, alleges that plaintiff's employment contract with the State of Oregon also consisted of her agreement to manage OHLA consistently with the Governor's directives and instructions. Am. Compl. ¶ 65. This prong alleges that plaintiff complied with those instructions and directives and that her doing so initiated the staff complaints for which she was discharged. In other words, plaintiff argues that she was fired for following the Governor's directives, in breach of her employment agreement with the State of Oregon.

State defendants' motion to dismiss plaintiff's third claim for relief is therefore denied on this ground.

11- OPINION AND ORDER

II. Plaintiff's Motion to Amend Complaint

Plaintiff requests leave to amend her complaint to allege that current State defendant Kroger violated 42 U.S.C. § 1983 when he failed to offer plaintiff a name-clearing hearing.

Under Federal Rule of Civil Procedure 15(a), leave to amend pleading "shall be given freely when justice so requires." The court may consider several factors when considering a motion to amend: (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and (4) futility of amendment. Sweaney v. Ada County, 119 F. 3d 1385, 1392 (9th Cir. 1997). Here, I find amendment futile in light of my ruling on State defendants' motion to dismiss Kroger from plaintiff's first and second claims for relief, and plaintiff's proposed amendments do not alter my analysis. I also find that plaintiff failed to confer as required by Local Rule 7-1. Therefore, plaintiff's motion to amend her complaint is denied.

CONCLUSION

For the reasons discussed above, State defendants' Motion for Partial Summary Judgment (doc. 44) is GRANTED in part and DENIED in part. Plaintiff's Motion to Amend Complaint (doc. 55) is DENIED. Plaintiff's Motion to Strike (doc. 51) is DENIED.

IT IS SO ORDERED.

Dated this 22nd day of November, 2011.

Ann Aiken

Ann Aiken
United State District Judge