IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN K. WILSON, an individual,

        Plaintiff,

   v.

STATE OF OREGON; THEODORE
KULONGOSKI, Governor of Oregon;
JOHN KROGER, Attorney General of
the State of Oregon; SCOTT HARRA,
Director, Oregon Department of
Administrative Services; CLAUDIA
BLACK, Health Policy Advisor to
the Governor; TONY GREEN,
Director of Communications and
Policy for Oregon Dept. of
Justice; DONNA SANDOVAL BENNETT,
Assistant Attorney General; and
SERVICE EMPLOYEES INTERNATIONAL
UNION, LOCAL 503; CHRISTINA
McCALLISTER; TIMOTHY MOLLOY;
CERYNTHIA MURPHY; SAMANTHA
PATNODE; LAWRENCE PECK; and
CALLIE ZINK, individuals,

        Defendants.

No. 6:10-cv-6393-AA
OPINION AND ORDER

1 - OPINION AND ORDER

Roger Hennagin
Roger Hennagin, P.C.
8 North State Street, Suite 300
Lake Oswego, OR 97034
    Attorney for Plaintiff

Marc A. Stefan
Supervising Attorney
SEIU Local 503, OPEU
P.O. Box 12159
Salem, OR 97309
    Attorney for Defendant Local 503

Marc Abrams
Senior Assistant Attorney General
Department of Justice
1515 SW Fifth Ave., Suite 410
Portland, OR 97201
    Attorney for State defendants

AIKEN, Chief Judge:

Plaintiff Susan Wilson filed suit against the State of Oregon, the former Governor and other state officials (State defendants), the Service Employees International Union, Local 503 (Local 503), an Oregon public employees union, and individual union members. After dismissal and voluntary dismissal of several claims, two claims remain: a claim alleging a violation of plaintiff's due process rights against defendant Scott Harra and a claim for intentional interference with plaintiff's employment against Local 503. See Stipulated Dismissal of Certain Claims (doc. 88) at 2. Harra now moves for summary judgment and Local 503 again moves for dismissal.

## BACKGROUND

Plaintiff was employed with the Oregon Health Licensing Agency

(OHLA) from July 1, 1999 to March 5, 2009. Plaintiff was appointed by then-Governor Kitzhaber, and the Director of the Oregon Department of Administrative Services (DAS) later became her appointing authority. Scott Harra was the Director of DAS at the time of plaintiff's discharge.

In February 2003, then-Governor Kulongoski instituted a new directive requiring agencies to streamline their operations and reduce impacts of governmental regulation on Oregon businesses. In 2005, Gov. Kulongoski issued a second regulatory streamlining directive, and in 2007, he instructed health-related agency directors to ensure the enforcement of Oregon's consumer protections laws. With the assistance of her administrative services director, Richard McNew, plaintiff initiated a planning process to achieve compliance with the Governor's regulatory streamlining objectives. The plan involved reorganization of the agency and reassignment of OHLA staff. McNew hired temporary staff, including plaintiff's daughter, to assist with this process.

At some point, several staff members apparently complained to Local 503 representatives that plaintiff and McNew engaged in nepotism and misconduct. Plaintiff maintains that these complaints were false and motivated by the staff members' displeasure about the proposed reorganization of OHLA and potential reassignments.

Local 503 representatives relayed these complaints to the Governor's office and the Attorney General's office. In doing so,

3 - OPINION AND ORDER

plaintiff maintains that Local 503 bypassed the grievance process pursuant to the collective bargaining agreement between Local 503 and the State. Further, plaintiff alleges that State officials did not notify plaintiff of the complaints lodged against her.

In late January 2009, Local 503 officials, representatives from the Governor's office and DAS, and several OHLA employees met to discuss the complaints against plaintiff and McNew. Plaintiff alleges that she was not afforded the opportunity to address the staff grievances.

On February 2, 2009, plaintiff was placed on administrative leave pending an investigation into the complaints lodged against plaintiff and other OHLA staff. Tony Green, spokesman for the Attorney General's office, issued a statement that several OHLA managers and employees had been placed on administrative leave after concerns about OHLA were reported to the Governor. Abrams Decl. Ex. G at 1 (newspaper report quoting Green as stating: "Early last week, we received concerns about management at this agency.... We began looking into it."). At that time, Green "would not reveal the names of those put on leave or comment on the nature of the allegations against them." Id.; see also id. Ex. G at 4 (nsewspaper article stating that "Officials from DAS and the Oregon Department of Justice declined Tuesday to reveal the nature of the allegations that led to the investigation.").

On February 3, 2009, newspaper reports quoted a spokeswoman as

4 - OPINION AND ORDER

stating that the Governor's office "took these allegations very seriously," and Green as stating, "We just don't know the full scope of issues now." Id. Ex. G at 2.

By February 5, 2009, the Attorney General's office released the names of plaintiff and others who were placed on administrative leave. The Attorney General did not "release[] details of what charges are under investigation." Abrams Decl. Ex. G at 6.

On March 5, 2009, plaintiff was permanently discharged. In newspaper reports, no reason was given for plaintiff's termination. Instead, Green was quoted as stating, "She serves at the pleasure of DAS, and DAS made a decision to make a change[.] These are not cases where there is any need for cause. She was told her services were no longer required." Id. Ex. G at 20-21. Plaintiff was never offered a name-clearing hearing.

## DISCUSSION

### A. Harra's Motion for Summary Judgment

As an initial matter, Harra argues that plaintiff must stand by her claim that Harra conspired to violate her due process rights, a claim that must be dismissed because plaintiff presents no evidence that Harra participated in a conspiracy against her. Harra argues that plaintiff should not be permitted, at this stage of the proceedings, to alter her claim and allege that Harra directly violated her due process rights by denying her a name-clearing hearing.

5 - OPINION AND ORDER

As indicated in my previous Opinion and Order, plaintiff's Amended Complaint can be construed to allege a direct violation of her due process rights by Harra, particularly in light of the State defendants' position that Harra was the person with authority to grant plaintiff a name-clearing hearing. While plaintiff has not sought further amendment of her claim, counsel indicates he intended to do so in the Pretrial Order. I find that the State defendants have been on notice of this claim, and Harra will suffer no prejudice if it is considered. Therefore, I decline to grant summary judgment on this ground.

Harra next argues that plaintiff's due process claim fails on the merits because she did not request a name-clearing hearing and she had no protected liberty interest when no stigmatizing information was published by State employees.

I reject Harra's contention that plaintiff's failure to request a hearing bars her claim, as the Ninth Circuit has not imposed this requirement. See Adcock v. City of Canby, 2011 WL 609799, at *8 (D. Or. Feb. 15, 2011); Tibbetts v. State Acc. Ins. Fund Corp., 2008 WL 4144441, at *2 (D. Or. Sept. 4, 2008). That said, I agree with Harra that plaintiff fails to show that State officials published a stigmatizing charge against her in connection with her termination so as to implicate her liberty interests.

It is well-established that a terminated employee has a constitutionally-based liberty interest in clearing her name when

6 - OPINION AND ORDER

stigmatizing information is published in connection with the termination. Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972). "If, in the context of employment termination, the employer publicizes a charge that 'impairs a reputation for honesty or morality,' then a liberty interest is implicated and the employee must be allowed to "refute the stigmatizing charge.'" Tibbetts v. Kulongoski, 567 F.3d 529, 536 (9th Cir. 2009) (quoting Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1179 (9th Cir. 1998) (per curiam)).

Plaintiff presents no evidence to support her claim that State representatives published stigmatizing remarks suggesting that she was terminated due to dishonesty or moral turpitude, as opposed to incompetence or lack of management skills. See Fed. Deposit Ins. Corp. (FDIC) v. Henderson, 940 F.2d 465, 477 (9th Cir. 1991) ("Only the stigma of dishonesty or moral turpitude gives rise to a liberty interest; charges of incompetence do not."); Tibbetts, 567 F.3d at 537 (accord). According to the unrebutted evidence submitted by the State defendants, State officials repeatedly declined to describe the nature of the OHLA investigation and did not assert or suggest that plaintiff was terminated for wrongdoing. Instead, Green stated that the State "received word of concerns about [OHLA]'s management" and that "DAS made a decision to make a change" and "no longer required" plaintiff's services. Abrams Decl. Ex. G at 5, 20-21; see Bollow v. Fed. Reserve Bank of San Francisco, 650 F.2d 1093, 1101 (9th Cir. 1981) ("When reasons are not given, inferences

7 - OPINION AND ORDER

drawn from dismissal alone are simply insufficient to implicate liberty interests.").

Granted, several newspapers reported that the investigation of OHLA managers involved complaints of "wrongdoing," "nepotism," and "hostility" toward OHLA employees. However, this information was not attributed to a State official or representative. Rather, unnamed "sources" and a Local 503 representative provided the information published in the newspaper reports. See Abrams Decl. Ex. G. Plaintiff presents no evidence that the "sources" or union representative provided such information at the State's request.

Even if the statements by State officials could be construed as stigmatizing in the context of the newspaper reports, I find that Harra is entitled to qualified immunity. Given the neutrality of the statements, Harra's conduct did not violate plaintiff's clearly established due process rights of which a reasonable State official would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Tibbetts, 567 F.3d at 539; FDIC v. Henderson, 940 F.2d at 477-478. Therefore, summary judgment is granted on this claim.

B. Local 503's Second Motion to Dismiss

In her Fifth Claim for Relief, plaintiff alleges that Local 503 intentionally interfered with her employment when union representatives met with State officials in a "clandestine" manner and made false accusations against her, for the purpose of causing her termination or otherwise interfering with her employment. Am.

8 - OPINION AND ORDER

Compl. ¶¶ 79-82. The court previously denied a motion to dismiss brought by Local 503, finding that plaintiff sufficiently alleged intentional interference with her economic relations.

In its renewed motion, Local 503 does not set forth facts or evidence to support dismissal. Rather, it relies on plaintiff's voluntary dismissal of other claims and argues that allegations relating to the dismissed claims must be stricken, and - absent such allegations - plaintiff's Amended Complaint fails to allege facts to support her intentional interference claim.

I disagree. Simply because plaintiff voluntarily dismissed several of her *claims* does not necessarily require the court to strike all factual *allegations* pertaining to those claims, particularly when plaintiff's Amended Complaint "realleges" those facts against Local 503 in her Fifth Claim for Relief. See Am. Compl. ¶ 78. Moreover, I have already found plaintiff's allegations sufficient, and this case has long passed the pleading stage. Local 503 must therefore present facts to support the deficiency of plaintiff's claims.

Local 503 also urges the court to exercise its discretion and decline supplemental jurisdiction over this claim. I find such request appropriate now that plaintiff's federal claims have been dismissed. A district court may decline to exercise supplemental jurisdiction over state law claims if the court dismisses all federal claims giving rise to original jurisdiction. 28 U.S.C. §

9 - OPINION AND ORDER

1367(c)(3). In such cases, the Ninth Circuit encourages district courts to "decline jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989). Accordingly, this claim will be dismissed without prejudice.

## CONCLUSION

Harra's Motion for Summary Judgment (doc. 80) is GRANTED, and Local 503's Motion to Strike and to Dismiss (doc. 96) is GRANTED in part. Summary judgment is GRANTED in favor of defendant Harra on plaintiff's Second Claim for Relief, and plaintiff's Fifth Claim for Relief against Local 503 is DISMISSED WITHOUT PREJUDICE. The Clerk is directed to issue Judgment accordingly.

IT IS SO ORDERED.

Dated this 13th day of June, 2012.

_____
Ann Aiken
United States District Judge